**STATE OF TENNESSEE**
**Department of Commerce and Insurance**
500 James Robertson Parkway
Nashville, TN 37243-1131
PH - 615.532.5260, FX - 615.532.2788
Jerald.E.Gilbert@tn.gov

June 15, 2016

Shelter Mutual Insurance Company
1817 West Broadway, % R. Rawlins
Columbia, MO  65218
NAIC # 23388

Certified Mail
Return Receipt Requested
7015 0640 0007 0044 0413
Cashier # 26336

Re:   Tony Savage And Beverly Savage   V.   Shelter Mutual Insurance Company

Docket # CT-002365-16

To Whom It May Concern:

Pursuant to Tennessee Code Annotated § 56-2-504 or § 56-2-506, the Department of Commerce and Insurance was served June 14, 2016, on your behalf in connection with the above-styled proceeding. Documentation relating to the subject is herein enclosed.

Jerald E. Gilbert
Designated Agent
Service of Process

Enclosures

cc: Circuit Court Clerk
    Shelby County
    140 Adams Street, Rm 324
    Memphis, Tn 38103

(CIRCUIT/CHANCERY) COURT OF TENNESSEE
140 ADAMS AVENUE, MEMPHIS, TENNESSEE 38103
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

ELECTRONICALLY FILED
2016 Jun 09 AM 11:04
CLERK OF COURT - CIRCUIT

## SUMMONS IN CIVIL ACTION

Docket No. _____

☉ Lawsuit
○ Divorce

Ad Damnum $ _____

| TONY SAVAGE and wife, BEVERLY SAVAGE, | VS | SHELTER INSURANCE COMPANIES d/b/a SHELTER MUTUAL INSURANCE COMPANY d/b/a SHELTER INSURANCE d/b/a SHELTER GENERAL INSURANCE COMPANY, |
|---|---|---|
| Plaintiff(s) | | Defendant(s) |

TO: (Name and Address of Defendant (One defendant per summons))

SHELTER INSURANCE COMPANIES d/b/a SHELTER MUTUAL INSURANCE COMPANY d/b/a SHELTER INSURANCE d/b/a SHELTER GENERAL INSURANCE COMPANY
1817 West Broadway
Columbia, MO 65218
(Serve through the Commissioner of Insurance)

Method of Service:
○ Certified Mail
○ Shelby County Sheriff
☉ Commissioner of Insurance ($)
○ Secretary of State ($)
○ Other TN County Sheriff ($)
○ Private Process Server
○ Other

($) Attach Required Fees

You are hereby summoned and required to defend a civil action by filing your answer with the Clerk of the Court and serving a copy of your answer to the Complaint on JAMES W. COOK Plaintiff's attorney, whose address is 9057 Valley Crest Lane, Suite 102, Germantown, TN 38138

telephone 901-753-5898 within THIRTY (30) DAYS after this summons has been served upon you, not including the day of service. If you fail to do so, a judgment by default may be taken against you for the relief demanded in the Complaint.

JIMMY MOORE, Clerk / DONNA RUSSELL, Clerk and Master

TESTED AND ISSUED _____   By _____, D.C.

### TO THE DEFENDANT:

NOTICE: Pursuant to Chapter 919 of the Public Acts of 1980, you are hereby given the following notice:
Tennessee law provides a ten thousand dollar ($10,000) personal property exemption from execution or seizure to satisfy a judgment. If a judgment should be entered against you in this action and you wish to claim property as exempt, you must file a written list, under oath, of the items you wish to claim as exempt with the Clerk of the Court. The list may be filed at any time and may be changed by you thereafter as necessary; however, unless it is filed before the judgment becomes final, it will not be effective as to any execution or garnishment issued prior to the filing of the list. Certain items are automatically exempt by law and do not need to be listed. These include items of necessary wearing apparel (clothing) for yourself and your family and trunks or other receptacles necessary to contain such apparel, family portraits, the family Bible and school books. Should any of these items be seized, you would have the right to recover them. If you do not understand your exemption right or how to exercise it, you may wish to seek the counsel of a lawyer.

FOR AMERICANS WITH DISABILITIES ACT (ADA) ASSISTANCE ONLY, CALL (901) 222-2341

I, JIMMY MOORE / DONNA RUSSELL, Clerk of the Court, Shelby County, Tennessee, certify this to be a true and accurate copy as filed this

_____ 20__

JIMMY MOORE, Clerk / DONNA RUSSELL, Clerk and Master   By: _____, D.C.

## RETURN OF SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE** SERVED THE WITHIN SUMMONS:

By delivering on the _____ day of _____, 20_____ at _____M. a copy of the summons and a copy of the Complaint to the following Defendant _____

at _____

_____
Signature of person accepting service

By: _____
Sheriff or other authorized person to serve process

## RETURN OF NON-SERVICE OF SUMMONS

I HEREBY CERTIFY THAT I **HAVE NOT** SERVED THE WITHIN SUMMONS:

To the named Defendant _____

because _____ is (are) not to be found in this County after diligent search and inquiry for the following

reason(s): _____

This _____ day of _____, 20_____.

By: _____
Sheriff or other authorized person to serve process



**The Shelby County, Tennessee Circuit Court**

**Case Style:** TONY SAVAGE VS SHELTER INSURANCE

**Case Number:** CT-002365-16

**Type:** SUMMONS ISSD TO MISC

Sharon Smith, DC

Electronically signed on 06/09/2016 12:57:34 PM

ELECTRONICALLY FILED
2016 Jun 09 AM 11:04
CLERK OF COURT - CIRCUIT

IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

TONY SAVAGE and wife,
BEVERLY SAVAGE,

    Plaintiffs,

vs.

SHELTER INSURANCE COMPANIES
d/b/a SHELTER MUTUAL INSURANCE
COMPANY d/b/a SHELTER INSURANCE
d/b/a SHELTER GENERAL INSURANCE
COMPANY,

    Defendant.

No. CT-002365-16
**JURY DEMANDED**

## COMPLAINT FOR BREACH OF CONTRACT

COME NOW the Plaintiffs, Tony Savage and wife, Beverly Savage (hereinafter referred to as "Plaintiffs") and sue the Defendant, Shelter Insurance Companies d/b/a Shelter Mutual Insurance Company d/b/a Shelter Insurance d/b/a Shelter General Insurance Company (hereinafter referred to as "Shelter") for damage arising out of Shelter's breach of its contract to insure Plaintiffs' 1948 Chevrolet pickup truck.

For cause of action, Plaintiffs would show to the Court as follows:

    1.    Plaintiffs are residents of Rossville, Fayette County, Tennessee.

    2.    Shelter and its affiliates are foreign corporations doing business in Tennessee with its agent that wrote and sold said policy to Plaintiffs doing business in Collierville, Shelby County, Tennessee.

1

3. Shelter, through its agent, Joan Witte Lutcf, wrote a policy of insurance for Plaintiffs insuring their 1948 Chevrolet pickup truck for liability and physical damage coverage including loss to the vehicle as a result of theft.

4. The 1948 Chevrolet pickup truck, being a unique antique vehicle, was insured for loss or damage for a specific amount of money, $50,000.00. A copy of the declaration page, Collision and Comprehensive Maximum Limit Endorsement and Endorsement Limit Amount from said policy are attached hereto as Collective **Exhibit A**.

5. On or about February 26, 2011, Plaintiff Tony Savage entered into a contract with NSane Hot Rodz (hereinafter "NSane") to perform the services listed on said contract on the insured 1948 Chevrolet truck with the terms of the services and the remuneration for NSane detailed thereon. A copy of said contract is attached hereto as **Exhibit B**.

6. After the signing of the contract, the insured 1948 Chevrolet truck was placed in the possession of NSane to perform the work it had contracted to do. During the course of what should have been time working on the vehicle Plaintiff Tony Savage would contact NSane for progress reports. He was assured by NSane that the restoration was coming along well. When the time began to draw out past the reasonable restoration time, Plaintiff Tony Savage became more insistent for status reports from NSane, but NSane would put him off stating that it needed additional replacement parts to complete the restoration. Plaintiff Tony Savage complied with those requests and furnished the parts. In response to Plaintiff Tony Savage's inquiries, NSane would provide small progress updates but then he would not hear from NSane for months until he was able to contact it again.

7. Having become frustrated with NSane's lack of progress and increasing failure to provide status reports and return phone calls, Plaintiff Tony Savage e-mailed NSane in March of

2

2014 notifying it of a small list of items that he wanted to pick up and return to his sponsors. NSane took him to its shop and a storage trailer, but it could only produce two of the eight items Plaintiff had requested. Plaintiff also noticed that at the time he was taken to NSane's shop and storage trailer that the truck's original sheet metal, cab, interior, inner and outer front fenders, hood, frame, suspension, bed, tailgate, etc., were not found among the items NSane represented to him that it had.

8. Plaintiffs secured the services of Investigators, Inc. and on September 24, 2014 its investigator arrived at the home of NSane's owner. There were no vehicles visible at that residence, but three Chevrolet-type doors that appeared to be 1947 to 1950 models lay next to the garage door along with a 1957 Chevrolet-type hood. The private investigator proceeded to the business address of NSane and met with the owner and his wife. Prior to these visits the investigator had been furnished with information, documentation and photographs of the insured vehicle. The investigator approached NSane's owner on the premise that he was considering restoration of an older model Chevrolet truck and was given a guided tour through the shop. NSane's owner commented that everything in the shop was owned by individuals or was committed. There were no items in the garage that matched the photos provided by Plaintiffs, the insured truck was not there, nor were its parts.

9. The investigator reported his findings to Plaintiff Tony Savage and in early October of 2014 Plaintiff Tony Savage filed a theft report with the Jefferson County Sheriff's Department. Plaintiffs then turned in a claim to their insurance company, Shelter, for the theft of his truck.

10. In response to Plaintiffs' claim, Shelter sent an adjuster to investigate the missing insured vehicle. Prior to the adjuster meeting with NSane, Plaintiffs furnished the adjuster with

photographs and documents to aide him in identifying the vehicle and parts, if they were in the possession of NSane, or to eliminate other vehicles or parts that might be claimed to be the insured vehicle. The adjuster returned from his visit reporting that he had spoken with the owner, who showed him a vehicle and told him it was Plaintiffs' vehicle. As Shelter reported to Plaintiffs, the adjuster completed a visual inspection of what was stated as being Plaintiffs' 1948 Chevrolet pickup truck. The adjuster told Plaintiff Tony Savage that he had not taken the time to review the photographs and documents he had been provided because it "was too much information." The adjuster took photographs of what the owner represented as being Plaintiffs' vehicle, but those photographs were photos of replacement parts, not the insured vehicle.

11. Plaintiff Tony Savage complained to Shelter about the negligent and misguided investigation the adjuster purportedly conducted on behalf of Shelter's insureds, but was rebuked by Shelter, who advised that NSane's owner told the adjuster that during the process of restoration the original contract had been superceded by another agreement changing the terms of the written contract. Shelter took the word of NSane's owner without any attempt to verify an alleged new pricing agreement, vehicle or parts numbers or supporting documentation from NSane. Shelter advised its insureds that its investigation showed that there had not been a theft or a selling off of parts by NSane, but rather that its own insured was lying to Shelter about the theft in order to avoid a debt owed to NSane. Shelter took the word of a stranger over the word of its insured, who had been a Shelter customer for 22 years with no previous claims.

12. Shelter negligently failed to investigate NSane or its owner to test the truth of his statements, or his reputation in the community as to telling the truth, any prior criminal activity, or his financial situation. Among the documents Plaintiffs furnished to Shelter was a copy of an e-mail from NSane to Plaintiffs dated July 22, 2014. Having been criticized by Plaintiffs about

4

the slow work, NSane owner, Dewayne Morgan, stated there was no time limit for the work since he was doing the project for free. That information should have caused Shelter to question the truthfulness of NSane and allowed it to confront NSane's claim of a debt based on 625 hours of work. Shelter chose to disregard this and the other documents and pictures Plaintiffs furnished it for use in its inspection and conversation with NSane and later, when confronted by Plaintiffs about this proving NSane was lying about any lien or debt, Shelter advised the e-mail was of no importance in this loss. A copy of said e-mail is attached hereto as **Exhibit C**.

13. Shelter accepted NSane's word that it had put in 625 hours working on this vehicle even though it did not see the vehicle anywhere in the process of being completed or worked on and even though it would know that the claim of 625 hours was a ridiculous and outrageous claim for restoring a vehicle. Said time would mean that, at the hourly rate shown, working 8 hours per day, every day, that time would represent 78 days. Defendant is in the business of car damage and repair and knew better.

14. It is believed and so alleged that Shelter has reported and/or disseminated libelous information to other insurance companies, insurance institutions or rating companies involved with maintaining individual's claim history to provide prospective insurers a claim history upon which an insurer can evaluate an applicant for purposes of setting a policy price or deciding whether to turn down the application. That information was false, defamatory and libelous, both to Plaintiffs in their individual capacity and especially as to their business of restoring and showing vehicles. Such action by Shelter constitutes libel and libel per se.

15. Plaintiffs further allege that T.C.A. § 56-8-105, **Unfair Claims Practice**, sets forth standards in the State of Tennessee for insurers and claims entities. Among those matters that constitute unfair claim practices are:

\* \* \*

(3) Failing to adopt and implement reasonable standards for the prompt investigation and settlement of claims arising under its policies;

(4) Except when the prompt and good faith payment of claims is governed by more specific standards, not attempting in good faith to effectuate prompt, fair and equitable settlement of claims submitted in which liability has become reasonably clear;

\* \* \*

(6) Refusing to pay claims without conducting a reasonable investigation; . . . .

16. Plaintiffs charge that Shelter's actions in investigating and denying this claim constituted bad faith, both common law and by statute. Plaintiffs gave Shelter notice that, if Shelter refused to pay the loss within 60 days after demand, Plaintiffs would file suit against it. Shelter ignored the demand and more than 60 days has expired prior to filing this lawsuit. **T.C.A. § 56-7-105. Additional liability upon insurers and bonding companies for bad-faith failure to pay promptly** provides as follows:

> **(a)** The insurance companies of this state, and foreign insurance companies and other persons or corporations doing an insurance or fidelity bonding business in this state, in all cases when a loss occurs and they refuse to pay the loss within sixty (60) days after a demand has been made by the holder of the policy or fidelity bond on which the loss occurred, shall be liable to pay the holder of the policy or fidelity bond, in addition to the loss and interest on the bond, a sum not exceeding twenty-five percent (25%) on the liability for the loss; provided, that it is made to appear to the court or jury trying the case that the refusal to pay the loss was not in good faith, and that the failure to pay inflicted additional expense, loss, or injury including attorney fees upon the holder of the policy or fidelity bond; and provided, further, that the additional liability, within the limit prescribed, shall, in the discretion of the court or jury trying the case, be measured by the additional expense, loss, and injury including attorney fees thus entailed.

17. Plaintiffs further aver that Shelter's action in its investigation and ultimate denial of coverage was calculated to avoid the rightful claim of its insureds, accepting the word of a stranger without any support as to the stranger's version of the matter and documents to the

6

contrary, thus, treating its own insureds of 22 years as liars pursuing a fraudulent claim and was a conscious action of a reprehensible character. Plaintiffs allege that Shelter's actions were intentional and that it was its conscious objective or desire to engage in the conduct or cause the result to avoid its legal responsibility to its insureds that it had promised in its policy. Plaintiffs further charge that Shelter acted maliciously in that it was motivated by ill will, monetary gain and/or spite to deny Plaintiffs' lawful claim for the purpose of keeping the money it rightfully owed Plaintiffs.

18. Plaintiffs allege that Shelter's breach of contract, negligence in its investigation, and willful, intentional and malicious actions caused them to lose the value of their vehicle and not having the vehicle caused them a loss of business profits in not being able to show and sell the vehicle.

19. As a result of the actions of Shelter, Plaintiffs were and continue to be damaged. Plaintiffs seek to recover all damages to which they may be entitled under the law from Shelter, which include, but are not limited to the following:

(a) Loss of use of funds due under the policy of insurance;

(b) 25% penalty for bad faith;

(c) All applicable bad faith penalties, including common law bad faith;

(d) Statutory and discretionary costs;

(e) Compensatory damages, loss of business;

(f) Punitive damages;

(g) Pre-judgment interest;

(h) Post-judgment interest;

(i) Incidental and consequential damages;

(j)     For such further relief, general, equitable and specific, to which Plaintiffs may be entitled in these premises.

WHEREFORE, PREMISES CONSIDERED, PLAINTIFFS PRAY for such damages, compensatory and punitive, as the Court and the jury may find fair and equitable. Plaintiffs demand a jury to try the cause.

Respectfully submitted,

_____
JAMES W. COOK      (8760)
Attorney for Plaintiffs
9057 Valley Crest Lane, Suite 102
Germantown, Tennessee 38138
Phone: (901) 753-5898
Fax: (901) 753-5829

Shelter Mutual Insurance Company
1817 W Broadway
Columbia, MO 65218
1-800-SHELTER (743-5837)

## Auto Policy Declarations and Policy Schedule

**Named Insured:**
TONY SAVAGE
1950 HIGHWAY 194
ROSSVILLE TN 38066-3800

**Policy Number:** 41-1-3551122-6
**Effective Date:** 12-02-2014 (12:01 AM CST)
**Expiration Date:** 06-02-2015 (12:01 AM CST)

**Agent:** JOAN WITTE LUTCF
41-0B209-60
567 W POPLAR AVE
SUITE 2
COLLIERVILLE TN 38017
901-854-6178

These Declarations are part of your policy and replace all prior Declarations.

| Vehicle | Vehicle ID |
|---|---|
| 1948 CHEV PICK UP | 3FPHI2887 |

**Additional Listed Insureds:**
TONY SAVAGE; BEVERLY H SAVAGE

| Coverages | Limit and/or Deductible | Endorsement Number | Premium |
|---|---|---|---|
| A. Bodily Injury | $100,000 Each Person   $300,000 Each Accident | | $10.74 |
| B. Property Damage | $100,000 Each Accident | | $5.78 |
| C. Medical Payments | $5,000 Each Person | | $2.12 |
| E. Uninsured Motorists | $100,000 Each Person   $300,000 Each Accident | | $11.52 |
| F. Collision | $500 Deductible | | $34.18 |
| G. Comprehensive | $100 Deductible | | $60.18 |
| Uninsured Motorist Property Damage Endorsement - Tennessee ($200 Deductible) | $200 Deductible   $50,000 Limit | A-127.3-A | $9.60 |

### Step-Down Limits Statement

For persons who become **insureds** solely because they have **permission** or **general consent** to use the **described auto**, this **policy** provides only the limits required by the financial responsibility law. For this state, those limits are **$25,000 bodily injury for each person, $50,000 bodily injury for each accident, and $15,000 property damage for each accident**. (The **policy** defines the bold terms.)

A-993.9-A

**Total for Term (This is Not a Bill):** $134.12

| Policy forms and additional endorsements attached to this policy | Number |
|---|---|
| Automobile Insurance Policy | A-41-A |
| Collision and Comprehensive Maximum Limit Endorsement  Cost Number 032 | A-549.6-A |
| Mutual Policy Notification | S-18-S |
| Amendatory Endorsement - Tennessee | A-145-A |


EXHIBIT
Collective
A

Page 1

(b) If the **insured** is a minor, to the **insured's** parent or guardian.
(c) Any **person** authorized by law to receive such payment.
9. Notice of Legal Action
If, before or after we make payment of a loss under this endorsement, the **insured** institutes any legal action against a **person** who may be legally responsible for any amount covered by this endorsement, a copy of the summons, complaint, or other process served in connection with such legal action will be immediately forwarded to **us**.

A-127-A thru A-127.7-A

## COLLISION AND COMPREHENSIVE MAXIMUM LIMIT ENDORSEMENT

(This coverage applies only when its endorsement number is shown in the **Declarations**.)

1. Under Part V - **AUTO PHYSICAL DAMAGE COVERAGES**, the following changes are made to increase the amount of coverage for paint and equipment added to the **described auto** after the time of its **original sale**:

The provision of the policy headed "LIMITED COVERAGE FOR ADDED PAINT AND EQUIPMENT UNDER COVERAGE F AND COVERAGE G", is deleted and replaced with the following:

LIMITED COVERAGE FOR ADDED PAINT AND EQUIPMENT UNDER COVERAGE F AND COVERAGE G
Coverages F and G, apply to the types of items listed below:
(1) paint applied to the **described auto** after its **original sale**;
(2) parts and equipment **permanently attached** to the **described auto** after its **original sale**;
(3) wireless components of equipment that was **permanently attached** to the **described auto** after its **original sale**; if the **permanently attached** component is essential to the functioning of the wireless component; and
(4) child restraint systems in the **described auto** at the time of the accident.

It is **our** right to elect whether we pay the **comparable value** or the **cost to repair** the paint and equipment covered by this section.

If **we** request them, **you** must provide proof of purchase and installation records for the covered items in order to obtain this coverage.

2. Under Part V - **AUTO PHYSICAL DAMAGE COVERAGES**, the following provision is added to set a maximum dollar limit for those coverages:

LIMIT OF **OUR** LIABILITY UNDER COVERAGE F AND COVERAGE G
**Our** maximum liability under COVERAGE F - COLLISION and COVERAGE G - COMPREHENSIVE is the amount stated in the **Declarations** corresponding to the number shown on this endorsement. We will pay the **direct loss** as set out in the **policy** or that stated limit, whichever is less.

A-549.6-A

## GENERAL POLICY NOTIFICATION

IN WITNESS WHEREOF, the company named in the **Declarations** has caused this policy to be signed by its President and Secretary.

*Randa Rawlins*
Secretary

*Rick Means*
President and CEO

S-17-S



# UNINSURED MOTORISTS **PROPERTY DAMAGE** ENDORSEMENT - TENNESSEE
## ($200 **DEDUCTIBLE**)

| Endorsement Number | Liability Limit |
|---|---|
| A-127-A | $ 10,000 |
| A-127.1-A | $ 15,000 |
| A-127.2-A | $ 25,000 |
| A-127.3-A | $ 50,000 |
| A-127.4-A | $ 100,000 |
| A-127.5-A | $ 150,000 |
| A-127.6-A | $ 200,000 |
| A-127.7-A | $ 250,000 |

(This coverage applies when an endorsement and limit is shown on the **Declarations**.)

**We** agree to the following terms.

1. Amended And Additional Definitions Used In This Endorsement

   All of the following definitions apply to **claims** made under this endorsement. The definitions contained in the policy to which this endorsement is attached also apply, as do the definitions contained in Part V of that policy whether or not those coverages are included. If those definitions vary from any of these, the definitions below control the handling of **claims** under this endorsement.
   (a) **Damages** means direct loss.
   (b) **Insured** means **you** and **your** legal representative.

2. Insuring Agreement

   **We** will pay **you** the **damages** resulting from **property damage** to:
   (a) The **described auto**,
   (b) A **utility trailer**, or
   (c) A **non-owned auto** which was **operated by you** or a **relative** at the time of the **accident**;
   if such **damages** were caused by the use of an **uninsured motor vehicle**.

3. Exclusions

   This coverage does not apply to any of the items listed below.
   (a) **Damages** caused by **you** or a **relative**.
   (b) **Damages** for which the **insured** made any settlement with any **person** who may be legally liable for those **damages**.

4. Limits of Liability

   The following provisions limit the amount of insurance provided under this endorsement.
   (a) This coverage is subject to the liability limit and a $200 **deductible** as stated for this coverage in the **Declarations**.
   (b) The inclusion of more than one **insured** will not operate to increase the applicable limits of **our** liability.
   (c) The limit of liability stated for this coverage in the **Declarations** is **our** maximum limit of liability for all **damages** resulting from any one **accident**. This is the most **we** will pay regardless of the number of:
       (1) Policies involved.
       (2) **Insureds**.
       (3) **Claims** made.
       (4) Vehicles or premiums stated in the **Declarations**.
       (5) Premiums paid.
       (6) Vehicles involved in the **accident**.
   (d) Any amount payable under this coverage will be reduced by the amount paid by or on behalf of anyone responsible for the **damages** on which the **claim** is based.
   (e) Any amount payable under this coverage will be reduced by the amount paid under Coverage F and Coverage G of this policy.

5. Waiver of **Deductible**

   The **deductible** will not be applied under this endorsement if **we** also insure the **described auto** under Coverage F, and the **operator** of the **uninsured motor vehicle** has been positively identified, and is solely at fault.

6. Other Insurance

   The insurance provided under this endorsement applies only as excess insurance over any other insurance applicable to the **damages** on which the **claim** is based.

7. Trust Agreement

   If **we** pay the **insured's claim** under this endorsement, the following terms apply.
   (a) **We** will be entitled to the proceeds of any settlement or judgment that the **insured** may have, or later obtain, against any **person** legally responsible for the **damages** on which the **claim** was based. **We** will only be entitled to such proceeds up to the amount of **our** payment.
   (b) The **insured** will hold in trust, for **our** benefit, all rights of recovery which he or she has against any **person** legally responsible for the **damages** on which the **claim** was based.
   (c) The **insured** will do whatever **we** may reasonably require to secure and enforce **our** rights under this endorsement.
   (d) The **insured** will do nothing to prejudice **our** rights under this endorsement.
   (e) If **we** request it in writing, the **insured** will take, through an attorney designated by **us**, any legal action **we** deem necessary to recover the payment **we** made under this endorsement. In the event of a recovery, **we** will be reimbursed, out of such recovery, for the expenses, costs, and attorneys' fees incurred in connection with such action.
   (f) The **insured** will execute and deliver to **us** all legal documents necessary to secure **our** rights under this endorsement.

8. Payment of Loss

   Any amount due under this endorsement is payable to any of the following, and **our** payment to any such **person** will discharge **our** obligation.
   (a) The **insured**.

A-127-A thru A-127.7-A

(Continued on Next Page)

# CONTRACT FOR SERVICES

This agreement is entered into on the date of February 22, 2011 between Billy D. Morgan d/b/a/ Nsane Hot Rodz, hereinafter referred to as NHR and Tony M. Savage, hereinafter referred to as Customer.

NHR agrees to perform the following services:

1. Install (provided) 4 WDB Kit, Paint Calipers (Red), Install (provided) New Hydroboost and Master Cylinder, Power Steering Pump (as a part of brakes), Install New (provided) Rear 4 Link.
2. Paint Engine Block (Red)
3. Fabricate Engine Compartment Side Panels, Engine cover, Hood Vents and Bracing, Fabricate Lower Dash Panel for Air Conditioning Bezels, Front Bumper Filler Panel.
4. Refinish Bedwood
5. Perform All Body Repairs – Prep for Paint
6. Install (provided) Gauges and Billet Bezel, Air Conditioning Vents, Hide Air Ride controls to flip down from under Dash when Needed.
7. Paint Truck according to provided Rendering.
8. Install New (provided) Chrome Grille, Chrome Bumper, Chrome Mirrors, and Headlights.

In exchange for said services, Customer agrees to pay up to $2,500.00 for all materials pre-approved based on NHR provided estimate and Compensate NHR as follows with parts from 1948 Chevrolet Truck in Trade (when removed and replaced by the items listed above) as Compensation for Labor:

1. (2) 17x7 and (2) 20x10 Torque Thrust II Wheels with BFG Tires
2. Grille
3. Bumper
4. Headlights and Bezels
5. Booster and Master Cylinder
6. AutoMeter Gauges
7. Mirrors
8. Mustang II Coils and Shocks
9. Firestone Air Ride Compressor
10. Power Steering Pump
11. Headers
12. Chrome Splash Apron (New)

Additional compensation to NHR will be in the form of Print Advertising Show Cards noting NHR as the Truck's Builder and Distributed to Enthusiasts attending Regional Events during a 2 Show Season period. Value for Advertising is priceless and return on investment cannot be projected.

Customer agrees and represents that Customer has insurance coverage for vehicle. Customer does request NHR provide adequate shelter for the vehicle to be protected against the elements and theft.

| Chevrolet | 3100 Truck | 1948 | 3FPHI2887 | Silver | 1 |
|---|---|---|---|---|---|
| MAKE | MODEL | YEAR | SERIAL # | COLOR | # of KEYS |

*Tony M. Savage* 2/26/2011        *Billy D. Morgan* 2/26/2011
CUSTOMER         DATE         NHR

EXHIBIT B

Subj: **Fwd: Tony Savage 7/22/2014 email with Nsane**
Date: 6/8/2016 6:01:09 P.M. Central Daylight Time
From: TMSDoc@aol.com
To: tony@carematttersintn.com
CC: cchplaw@aol.com

---

From: dewaynemorgan@nsanehotrodz.com
To: TMSDoc@aol.com
Sent: 7/22/2014 12:43:10 P.M. Central Daylight Time
Subj: Re: Tony Savage

Tony,

The metal work will be done on the truck in October. When I agreed to take on this project, there was no time line. I am doing this project for free and it was understood that I had to have time to work on the paying customers vehicles, so that I could afford to work on your project free of charge. You have been to my shop and have seen the truck in progress, and have picked up the parts you requested on your last trip. I will call you later this evening or tomorrow to discuss.

On 2014-07-22 13:59, TMSDoc@aol.com wrote:

> Dewayne,
>
> I never thought that we would come to this. We have been very patient during the 3 1/2 years.
>
> It now appears as though you have decided to not comply with the build schedule request provided to you via FedEx to resolve the concerns associated with the lack of progress and unaccounted for parts.
>
> Of the 239 emails between us in 97 of those you state that you will send pics on Friday of progress. 89 of those times it never happened.
>
> **No one wins** if we pursue this matter legally. Especially you as this would follow you and your shop with each and every Google search of your name and shop name.
>
> **We need this truck back or what remains of it.**
>
> **I am willing to provide you the following option to satisfy this matter if completed by October 15, 2014:**
>
> **Complete the chassis and suspension work including brake lines, air ride and gas tank.**

EXHIBIT C

ELECTRONICALLY FILED
2016 Jun 09 PM 1:39
CLERK OF COURT - CIRCUIT

IN THE CIRCUIT COURT OF SHELBY COUNTY, TENNESSEE
FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

TONY SAVAGE and wife,
BEVERLY SAVAGE,

    Plaintiffs,

vs.                                              No. CT-002365-16
                                                   JURY DEMANDED
SHELTER INSURANCE COMPANIES
d/b/a SHELTER MUTUAL INSURANCE
COMPANY d/b/a SHELTER INSURANCE
d/b/a SHELTER GENERAL INSURANCE
COMPANY,

    Defendant.

## PLAINTIFFS' FIRST REQUEST FOR PRODUCTION OF DOCUMENTS TO DEFENDANT

COME NOW the Plaintiffs, Tony Savage and wife, Beverly Savage, pursuant to the Tennessee Rules of Civil Procedure, and requests the Defendant, Shelter Insurance Companies d/b/a Shelter Mutual Insurance Company d/b/a Shelter Insurance d/b/a Shelter General Insurance Company (hereinafter referred to as "Shelter"), to produce the following:

REQUEST NO. 1: Please produce a true and exact certified copy of the policy that is the subject matter of this lawsuit.

REQUEST NO. 2: Please produce a true and exact copy of Shelter's claim file for the claim which is the subject matter of this lawsuit.

REQUEST NO. 3: Please produce copies of any correspondence between Shelter and the following:

(1) Tony and/or Beverly Savage including the package of documents furnished by Plaintiffs to Shelter before its visit to NSane Hot Rodz.

(2) NSane Hot Rodz, its owner(s), including but not limited to Dwayne Morgan, its employees, agents or representatives.

REQUEST NO. 4: Please produce copies of all written, recorded and/or video-taped statements of any party, Shelter employee, insured, investigative agency, witnesses, personnel of NSane Hot Rodz, including but not limited to Dwayne Morgan that in any way is related to your investigation of this claim.

REQUEST NO. 5: Please produce exact copies of any and all documents relating in any way to communications about this claim between Shelter, the Savages, any insurance rating agency, underwriting agencies, loss history agencies, agents, other insurance companies, or any other person or institution that collect data concerning policy losses including but not limited to intercompany communications.

REQUEST NO. 6: If Shelter claims a privilege that it relies on to not produce any of these requested documents, specify for each document the subject and nature of the document, specify for each document the privilege it claims and prepare and file its privilege log with the Court.

Respectfully submitted,

_____
JAMES W. COOK      (8760)
Attorney for Plaintiffs
9057 Valley Crest Lane, Suite 102
Germantown, Tennessee 38138
Phone: (901) 753-5898
Fax: (901) 753-5829

2

## CERTIFICATE OF SERVICE

I, James W. Cook, certify that I have forwarded a copy of the foregoing document with service of the Complaint pursuant to T.R.C.P. 33.01 to:

Shelter Insurance Companies
d/b/a Shelter Mutual Insurance Company
d/b/a Shelter Insurance
d/b/a Shelter General Insurance Company
1817 West Broadway
Columbia, MO 65218

_____
James W. Cook