**IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | ) | |
|---|---|---|
| TONY SAVAGE and | ) | |
| BEVERLY SAVAGE, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 2:16-cv-02573-JPM-cgc |
| v. | ) | |
| | ) | |
| SHELTER INSURANCE COMPANIES | ) | |
| d/b/a SHELTER MUTUAL INSURANCE | ) | |
| d/b/a SHELTER INSURANCE | ) | |
| d/b/a SHELTER GENERAL INSURANCE | ) | |
| COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This action concerns a breach of contract to insure an allegedly stolen vehicle. Before the Court is Defendant Shelter Insurance Companies d/b/a Shelter Mutual Insurance Company d/b/a Shelter Insurance d/b/a Shelter General Insurance Company ("Shelter Insurance")'s Motion for Summary Judgment, filed May 9, 2017. (ECF No. 23.) Plaintiffs Tony Savage and Beverly Savage responded in opposition on June 6, 2017. (ECF Nos. 26-27.) Defendant filed a reply on June 19, 2017. (ECF No. 28.) The Court ordered the filing of supplemental briefing, and the parties complied. (ECF Nos. 29, 32, 38.)

For the reasons stated below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

## I. BACKGROUND

### A. Factual Background

Plaintiffs, Tennessee residents, bring suit against Defendant Shelter Insurance, a foreign corporation with a principal place of business outside of Tennessee, for damages arising out of a breach of the contract to insure Plaintiffs' 1948 Chevrolet pickup truck. (ECF No. 1-1 ¶¶ 1-2.) While insured by Defendants, Plaintiffs contracted with NSane Hot Rodz ("NSane") for restoration of the truck. (Id. ¶¶ 3-6.) Plaintiffs became frustrated by their arrangement with NSane and sent a private investigator to NSane to ascertain the truck's status. (See ECF No. 1 ¶ 7-8; see also ECF No. 26 at PageID 199.) Thereafter, Plaintiffs believed "some of the vehicle parts were missing." (ECF No. 26; see also ECF No. 33 at PageID 303.) After Plaintiff sought to have their parts and truck returned to them, NSane's sent them a demand letter, requiring payment of unpaid labor and storage. (ECF Nos. 27-5, 26-3.) Plaintiffs then reported the truck stolen, believing NSane had sold the truck and its parts without permission. (See ECF No. 1 ¶ 9; ECF No. 33 at PageID 303; ECF No. 27-6.) Plaintiff then sought coverage for theft from Defendant. (ECF No. 1 ¶ 10; ECF No. 27 ¶ 5.) Defendant's adjuster investigated the claim, determined the truck was still in NSane's possession, and refused to cover the claim for theft under Plaintiffs' insurance policy. (ECF No. 1 ¶ 11; ECF No. 27 ¶ 7.) NSane then sold the truck at auction to repay Plaintiffs' debt in 2015. (ECF No. 26 at PageID 206.)

### B. Procedural Background

On June 9, 2016, Plaintiffs Tony Savage and Beverley Savage filed suit in the Circuit Court for Shelby County, Tennessee. (ECF No. 1-1.) Plaintiffs seek compensatory and punitive damages, bad faith penalties, pre- and post-judgment interest, and a jury trial. (Id.)

The Complaint alleges two causes of action: breach of contract and bad faith. (See id.) The Complaint alleges three bases for bad faith. First, it cites to Tenn. Code Ann. § 56-8-105, a provision of the Tennessee Unfair Trade Practices and Unfair Claims Settlement Act of 2009. (Id. ¶ 15.) However, Tenn. Code Ann. § 56-8-101(c) vests the exclusive authority to bring a claim under § 56-8-105 with the Commissioner of Commerce and Insurance. Accordingly, this Court lacks authority to adjudicate bad faith on this basis. Second, the Complaint alleges a claim for bad faith based on Tenn. Code Ann. § 56-7-105 for failure to pay. (Id. ¶ 16.) Third, the Complaint seeks "bad faith penalties, including common law bad faith." (Id. ¶ 19(c).) Because "under Tennessee law . . . no common law cause of action for bad faith between an insured and its insurer exists outside of § 56-7-105," Plaintiffs may not seek relief for common law bad faith. 6111 Ridgeway Grp., LLC v. Philadelphia Indem. Ins. Co., No. 15-2561-STA-CGC, 2016 WL 1045570, at *2 (W.D. Tenn. Mar. 15, 2016).

On July 13, 2016, Defendant removed this action, pursuant to 29 U.S.C. § 1441(a), based on diversity of citizenship. (ECF No. 1.) On July 13, 2016, the Defendant filed an Answer. (ECF No. 3.) The Court held a telephonic scheduling conference on August 15, 2016. (ECF No. 12.)

On May 9, 2017, the Defendant filed a Motion for Summary Judgment. (ECF Nos. 23, 24.) Defendant also filed a Statement of Undisputed Facts in Support of Motion for Summary Judgment on May 9, 2017. (ECF No. 25.) On June 6, 2017, Plaintiffs responded in opposition. (ECF No. 26.) The same day, Plaintiffs filed a Response to Defendant's Statement of Undisputed Facts. (ECF No. 27.) On June 19, 2017, Defendant filed a reply. (ECF No. 28.)

On June 20, 2017, the Court filed an Order for Supplemental Briefing on Validity of Lien. (ECF No. 29.) Defendant filed a timely supplemental brief on June 27, 2017. (ECF No. 32.) Plaintiffs then filed a timely supplemental brief on July 4, 207. (ECF No. 38.)

## II.     LEGAL STANDARD

### A.     Summary Judgment

Under Federal Rule of Civil Procedure 56, summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The initial burden rests on the moving party to show that there is no dispute regarding any genuine issue of material fact, and this burden can be met by demonstrating that there is no evidence underlying the nonmoving party's case. Slusher v. Carson, 540 F.3d 449, 453 (6th Cir. 2008). When confronted with a properly-supported motion for summary judgment, the nonmoving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e); see also Abeita v. TransAm. Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998). "Once the moving party satisfies its initial burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue of material fact." Mosholder v. Barnhardt, 679 F.3d 443, 448-49 (6th Cir. 2012). In reviewing a motion for summary judgment, the court must view the evidence "in the light most favorable to the nonmoving party, and draw all reasonable inferences in that party's favor." Smith v. Perkins Bd. of Educ., 708 F.3d 821, 825

4

(6th Cir. 2013) (quoting Slusher, 540 F.3d at 453); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

"The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). "[T]he district court has no 'duty to search the entire record to establish that it is bereft of a genuine issue of material fact.'" Pharos Capital Partners, L.P. v. Deloitte & Touche, 535 F. App'x 522, 523 (6th Cir. 2013) (per curiam) (quoting Tucker v. Tennessee, 539 F.3d 526, 531 (6th Cir. 2008), abrogation recognized by Anderson v. City of Blue Ash, 798 F.3d 338 (6th Cir. 2015)). "'[J]udges are not like pigs, hunting for truffles' that might be buried in the record." Emerson v. Novartis Pharm. Corp., 446 F. App'x 733, 736 (6th Cir. 2011) (alteration in original) (quoting United States v. Dunkel, 927 F.2d 955, 956 (7th Cir. 1991)). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-52. "[A] mere 'scintilla' of evidence in support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor." Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 251).

B.  **Contract Interpretation**

An insurance policy is to be interpreted as any other contract. Am. Justice Ins. Reciprocal v. Hutchison, 15 S.W.3d 811, 814 (2000). Accordingly, a valid and enforceable choice-of-law provision of an insurance policy dictates the applicable state law. See Banek Inc. v. Yogurt Ventures U.S.A., Inc., 6 F.3d 357, 360 (6th Cir. 1993); GTP Structures I, LLC v. Wisper II, LLC, 2015 WL 9413890 at *3 (W.D. Tenn. Dec. 22, 2015) (quoting Bourland,

5

Heflin, Alvarez, Minor & Matthews, PLC v. Heaton, 393 S.W.3d 671, 674 (Tenn. Ct. App. 2012)). The insurance policy at issue includes a choice-of-law provision that provides for the application of Tennessee law. (ECF No. 25-1 at PageID 125.) Therefore, without evidence suggesting this choice-of-law provision is either invalid or unenforceable, the Court will apply Tennessee law with regard to the interpretation of the insurance policy in the instant case.

Under Tennessee law, "[t]he question of the extent of insurance coverage is a question of law involving the interpretation of contractual language. . . ." Clark v. Sputniks, LLC, 368 S.W.3d 431, 441 (Tenn. 2012). "Insurance contracts are 'subject to the same rules of construction as contracts generally,' and in the absence of fraud or mistake, the contractual terms 'should be given their plain and ordinary meaning, for the primary rule of contract interpretation is to ascertain and give effect to the intent of the parties.'" Id. (quoting U.S. Bank, N.A. v. Tenn. Farmers Mut. Ins. Co., 277 S.W.3d 381, 386–87 (Tenn. 2009)). Tennessee courts also consider the policy as a whole and construe its terms "in a reasonable and logical manner." Merrimack Mut. Fire Ins. Co. v. Batts, 59 S.W.3d 142, 148 (Tenn. Ct. App. 2001). "Where provisions that purport to limit insurance are ambiguous, however, they must be construed against the insurance company and in favor of the insured." Osborne v. Mountain Life Ins. Co., 130 S.W.3d 769, 773 (Tenn. 2004).

The parties do not dispute that the insurance contract at issue clearly and unambiguously provides coverage for theft as property damage. As the contract in this case is clear and unambiguous, the interpretation of the contract is a question of law leaving no genuine factual issue for a jury to decide. See Kafozi v. Windward Cove, LLC, 184 S.W.3d 693, 698 (Tenn. Ct. App. 2005) ("A determination of the intention of the parties 'is generally treated as a question of law because the words of the contract are definite and undisputed, and

6

in deciding the legal effect of the words, there is no genuine factual issue left for a jury to decide.'" (quoting Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc., 78 S.W.3d 885, 890 (Tenn. 2002))).

Nor do the parties dispute that the term 'theft' is not defined in the contract. The Tennesseee General Assembly, however, has defined theft in Tenn.Code Ann. § 39–14–103, which provides that: "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Tenn.Code Ann. § 39–14–103.

Additionally, within an insurance contract, "exclusions help define and shape the scope of coverage." Standard Fire Ins. Co. v. Chester O'Donley & Assocs., Inc., 972 S.W.2d 1, 7 (Tenn. Ct. App. 1998). While the insuring agreement sets the outer limits of insurer liability, exclusions operate to decrease coverage. Id. Exclusions "should not be construed broadly in favor of the insurer, nor should they be construed so narrowly as to defeat their intended purpose." Id. at 8.

The parties do not dispute that a lien excludes coverage for theft. Whether that lien must be valid or if the lien must pre- or post-date the alleged theft is disputed.

### C.     Breach of Contract

Under Tennessee law, the elements of a breach of contract claim include "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." ARC LifeMed, Inc. v. AMC-Tennessee, Inc., 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005); Life Care Centers of America, Inc. v. Charles Town Associates Ltd. Partnership, 79 F.3d 496, 514 (6th Cir. 1996).

D.     Bad Faith

"It is well-settled under Tennessee law that no common law cause of action for bad faith between an insured and its insurer exists outside of § 56-7-105." 6111 Ridgeway Grp., LLC v. Philadelphia Indem. Ins. Co., No. 15-2561-STA-CGC, 2016 WL 1045570, at *2 (W.D. Tenn. Mar. 15, 2016); see Leverette v. Tenn. Farmers Mut. Ins. Co., No. M2011-00264-COA-R3-CV, 2013 WL 817230, at *18 (Tenn. Ct. App. Mar. 4, 2013); Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co., 590 F. Supp. 2d 970, 972 (M.D. Tenn. 2008).

Tennessee's insurance bad faith statute provides for a penalty, not to exceed 25% of the liability for the loss, when an insurer's refusal to pay the loss was not in good faith. Tenn. Code Ann. § 56–7–105(a). To state a bad faith claim under the statute, a plaintiff must show: (1) the policy of insurance must, by its terms, have become due and payable; (2) a formal demand for payment must have been made; (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days); and (4) the refusal to pay must not have been in good faith. Montesi v. Nationwide Mut. Ins. Co., 970 F.Supp.2d 784, 791 (W.D. Tenn. 2013).

To sustain a claim for failure to pay in bad faith a plaintiff must demonstrate there were no legitimate grounds for disagreement about the coverage of the insurance policy. Marlin Financial & Leasing Corp. v. Nationwide Mut. Ins. Co., 157 S.W.3d 796, 812–13 (Tenn. Ct. App. 2004). "Moreover, an insurer's refusal to pay is in good faith if the refusal to pay 'rests on legitimate and substantial legal grounds.'" Taylor v. Standard Ins. Co., No. 08-2585 V, 2009 WL 113457, at *5 (W.D. Tenn. Jan. 13, 2009) (quoting Kizer v. Progressive Cas. Ins. Co., No. 06 CV 1109, 2008 WL2048274 at *5 (M.D. Tenn. May 12, 2008)); Williamson v. Aetna Life Ins. Co., 481 F.3d 369, 378 (6th Cir. 2007). Additionally, a delay in

payment does not constitute bad faith where "there is a genuine dispute as to the value, no conscious indifference to the claim, and no proof that the insurer acted from 'any improper motive.'" Riad v. Erie Ins. Exch., 436 S.W.3d 256, 270 (Tenn. Ct. App. 2013) (citing Johnson v. Tennessee Farmers Mut. Ins. Co., 556 S.W.2d 750, 752 (Tenn. 1977)).

### III. ANALYSIS

Defendant argues that the Court should grant summary judgment in its favor because the insurance policy at issue does not cover Plaintiff's claim, and thus there is no breach of contract, bad faith, or liability for punitive damages. (ECF No. 23 at PageID 80-81.) The Court addresses each of Plaintiffs' causes of action in turn.

#### A. Breach of Contract

Defendant asserts that the insurance policy does not cover Plaintiffs' claim, and thus Defendant did not breach by refusing to cover Plaintiffs' claim. (ECF No. 24 at PageID 84.) Defendant makes two arguments: (1) Plaintiffs do not establish theft, and (2) even if they had, the claim would be excluded as a theft that occurred in the context of a lien. (Id. at PageID 84-87.)

##### 1. Theft

Defendant contends the insurance policy covers only direct loss, accidental—unintentional or unexpected—damages, or property damage (e.g., theft), but Plaintiffs' claim fails to establish any of these types of coverage. (Id. at PageIDs 85-86 (quoting policy).)

As to Plaintiffs' theft claim, Defendant argues that no theft occurred because Plaintiffs contracted with NSane to restore the truck. (ECF No. 24 at PageID 86.) In Tennessee, "[a]

9

person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property *without the owner's effective consent*." Grapevine Trucking, LLC v. Carolina Cas. Ins. Co., 2009 WL 3486639, at *6 (Tenn. Ct. App. Oct. 29, 2009) (emphasis added); T.C.A. § 39-14-103. Defendant specifically asserts that the contract with NSane provided NSane with effective consent to possess the truck for repairs and restoration, and thus NSane's possession of the truck did not amount to theft. (ECF No. 24 at PageID 86.) Plaintiffs do not address this issue directly. But Plaintiffs do contend "[t]he actual conversion occurred when Morgan sold the vehicle . . . in early 2015." (ECF No. 26 at PageID 206.) Plaintiffs also assert, however, that "when, upon demand, [NSane's owner] failed to redeliver the Savages' truck, he committed a conversion." (Id. at PageID 204.)

The Court first notes that it will disregard Plaintiffs' assertion that the alleged theft occurred in 2015 when the truck was sold. (Id. at PageID 206.) Plaintiffs' insurance claim for theft-coverage was made in 2014 (ECF No. 27 ¶ 5), and thus any allegations of theft after this claim are irrelevant to the Court's current breach of contract analysis.

Turning to NSane's refusal to deliver Plaintiffs' truck until Plaintiffs paid for unpaid labor and storage costs, the Court finds this refusal does not amount to theft. Even assuming the Plaintiffs' request for the truck revoked their previous effective consent under the contract with NSane (see ECF No. 27-5 ("We need this truck back or what remains of it.")), the undisputed facts do not establish that NSane intended to permanently deprive Plaintiffs' of the truck. Rather, the undisputed facts support the contrary conclusion.

A person acts with "intent" when "it is the person's conscious objective or desire to engage in the conduct or cause the result." T.C.A. § 39-11-106(18). The intent to deprive[1] may be based solely on circumstantial evidence, and the fact finder "may infer a . . . defendant's intent from the surrounding facts and circumstances." State v. Roberts, 943 S.W.2d 403, 410 (Tenn. Crim. App. 1996); see State v. Scates, 524 S.W.2d 929, 931 (Tenn. 1975). "[C]ourts in Tennessee have held that Tennessee's theft statute requires an intention to *permanently* deprive the owner of property." State v. Sanders, 232 N.C. App. 262, 266, 753 S.E.2d 713, 716, writ allowed, 367 N.C. 324, 755 S.E.2d 48 (2014), and aff'd, 367 N.C. 716, 766 S.E.2d 331 (2014) (emphasis added); see, e.g., State v. Leonard, No. W201501313CCAR3CD, 2016 WL 1446440, at *6 (Tenn. Crim. App. Apr. 12, 2016), appeal denied (Aug. 19, 2016).

In the instant case, NSane sent a demand letter requiring payment for past labor and storage before relinquishing the truck and parts. (ECF No. 26-3.) Without this payment, NSane suggested it would auction the truck to repay the debt. (Id.) According to Plaintiffs, before NSane sold the truck, they reported the truck stolen to the police and Defendant. (See ECF Nos. 27 ¶ 5; ECF No. 26 at PageID 206; ECF No. 27-6.) This evidence does not suggest NSane intended to permanently deprive Plaintiffs of the truck, because had Plaintiffs paid their debt, it appears from the face of the letter that NSane would have relinquished control over the truck.

---

[1] An owner may be deprived of property in multiple circumstances. See T.C.A. 39–11–106(a)(8)(A)(2012) ("permanently or for such a period of time as to substantially diminish the value or enjoyment of the property to the owner."); T.C.A. § 39–11–106(a)(8)(C) (Supp. 2011) (amended 2014) ("[d]ispos[ing] of property or us[ing] it or transfer[ing] any interest in it under circumstances that make its restoration unlikely.").

Plaintiffs attempt to argue that the alleged debt was not contemplated in the agreement between the parties and that NSane's actions fell outside their written agreement. (See ECF No. 26 at PageIDs 199-202.) The contract between NSane and the Plaintiffs, and any construction or breach thereof, is not properly before the Court. The instant action concerns the insurance policy between Plaintiffs and Defendant. Accordingly, it is not for the Court to decide whether the charges requested by NSane were within its contractual rights or if NSane breached the contract. The Court need only determine whether NSane intended to permanently deprive Plaintiffs of the truck when it sent its demand letter such that Defendant would be liable to cover a claim for theft.

The Court finds that Defendant has met its initial burden by showing that there is no dispute regarding any genuine issue of material fact whether NSane's conduct constituted theft, because there is no evidence underlying Plaintiffs' claim that NSane intended to permanently deprive Plaintiffs of the truck. To the contrary, NSane's demand letter and communications between NSane and Plaintiffs prior to the demand letter establish a clear intent by NSane to supply Plaintiffs with the truck in the future. (See ECF Nos. 26-3, 27-5.) Plaintiffs, again, do not directly refute NSane's intent, but do assert that they "thought some of the vehicle parts were missing" prior to receiving the demand letter. (ECF No. 26 at 199.) Plaintiffs fail to support this assertion with evidence.[2] Any speculation that the truck's parts

---

[2] It does appear, however, that Plaintiffs' attorney attempted to belittle the identification of the truck by NSane:

> Q: There's no way for you to be sure that what [NSane's owner] showed you was actually Mr. Savage's vehicle there?
>
> A: No.

(Detective Owen's Depo., ECF No. 27-4 at PageID 250:1-4.) Beyond bringing to light the potential the identified truck may not be Plaintiffs' truck, Plaintiffs fail to provide any direct evidence that the identified truck was not theirs.

were missing or sold prior to NSane's demand letter falls short of even a "mere 'scintilla' of evidence in support of the non-moving party's position" and so it is "insufficient to defeat summary judgment;" and because Plaintiffs have failed to "present evidence upon which a reasonable jury could find in [their] favor," the Court finds no theft occurred. Tingle v. Arbors at Hilliard, 692 F.3d 523, 529 (6th Cir. 2012) (quoting Anderson, 477 U.S. at 251). Consequently, the Court finds NSane is not liable for theft of Plaintiffs' truck, and thus Plaintiffs' theft claim is not covered by the insurance policy.

   2. **Exclusions**

Alternatively, even if Plaintiff's claim for theft fell within the policy, Defendant argues, the claim would still be excluded by the policy's exclusions. (Id. at PageID 87.) Defendant highlights where the exclusions preclude coverage of property damage (e.g., theft) in two scenarios: (1) theft by any person who has possession of the vehicle because of "'a lien, rental agreement, lease agreement or sales agreement,'" and (2) where the "'statute of limitations bars the insured's right to sue any person legally responsible for the property damage on which the claim is based.'" (Id. (quoting Policy, ECF No. 25-1 at PageID 136 ¶¶ 4, 11).) Defendant contends both scenarios are met here.

First, Defendant asserts NSane's owner, Dewayne Morgan, placed a garage keeper's lien on the truck, and refused to return it to Plaintiff when Plaintiff allegedly breached their contract. (Id.; ECF No. 1-1 ¶ 12; Dewayne Morgan Depo., ECF No. 25-3 at PageID 154:1-8 (Q: "Okay. So you maintained that you had a garage keeper's lien on the truck? A: Yes. Q: And what was the reason why that you had a garage keeper's lien? A: It was just breach of contract.").) Accordingly, Defendant contends either NSane's lien afforded it the "right to possess the vehicle and later sell the vehicle if not paid, or [NSane's] lien was the result of the

conversion, embezzlement, or concealment of the insured vehicle. In the first instance there is no theft, and in the latter instance exclusion (4) would apply and bar coverage." (ECF No. 24 at PageID 87.)

Plaintiffs first argue no lien existed because they owed no money to Morgan for repair or restoration of the truck. (ECF No. 26 at PageID 201.) But Plaintiffs admit Morgan sent a demand letter with an attached bill for labor and storage on October 31, 2014 stating, "If not paid, the vehicle and parts will be sold at auction." (Id.) Plaintiffs also take issue with the demand letter's content and an email exchange wherein Morgan suggested his work for Plaintiffs was "free." (Id.) Plaintiffs then argue that even if there was a lien it was invalid because NSane failed to obtain adequate consent or provide written notification of repairs to the truck. (Id. at PageID 203 (citing T.C.A. § 66-19-104).)

In Tennessee, service in repairing or storing an automobile creates a common-law lien to benefit the garageman in possession. Diamond Serv. Station v. Broadway Motor Co., 158 Tenn. 258, 12 S.W.2d 705 (1929); Simpson v. Bicentennial Volunteers, Inc., No. 01A01-9809-CV-00493, 1999 WL 430497, at *3 (Tenn. Ct. App. June 29, 1999); cf. Roberson v. W. Nashville Diesel, Inc., No. M2004-01825-COA-R3CV, 2006 WL 287389, at *4 (Tenn. Ct. App. Feb. 3, 2006); see also T.C.A. § 66-19-103. This common-law lien, however, may be invalid if the repairs were made without obtaining consent or written notification for the repairs. Borena v. Jacocks, No. M201600449COAR3CV, 2017 WL 1969645, at *4 (Tenn. Ct. App. May 12, 2017).

Defendant contends that the insurance policy's exclusion does not require a valid lien. (ECF No. 28 at PageID 258.) Such a requirement, it argues, would render the exclusion

14

meaningless: "if the exclusion required the lien to be valid, there would be no need for the exclusion because there would be no theft or conversion triggering coverage in the first place." (Id.) Nevertheless, Defendant argues that NSane "placed a valid garage keeper's lien on the vehicle at issue" because, pursuant to T.C.A. § 66-19-103, NSane lawfully possessed the vehicle. (ECF No. 32 at PageID 279.) Defendant further asserts the lien is valid because a record exists, via emails between the parties, of "good faith attempts" to obtain Plaintiffs' consent to additional repairs. (Id. at PageID 282.) Plaintiffs contend, however, that the grounds for the lien were improper, based on an alleged breach of contract rather than money due. (ECF No. 38 at PageID 427.)

Second, Defendant contends Plaintiffs were statutorily barred from bringing a claim of property damages against NSane when they notified Defendant. (ECF No. 28 at PageIDs 87-88 (citing Tenn. Code Ann. § 28-3-105).) Defendant argues the three-year statute of limitations began to run from the date Plaintiffs contracted with NSane in 2011. (ECF No. 24 at PageID 88.)[3]

Having found no theft occurred, the Court need not address whether NSane's demand letter constitutes a valid lien, or whether a valid lien is required under the exclusions of the insurance policy. If no theft occurred, Defendant did not breach its contractual obligation by refusing to pay for Plaintiffs' theft claim. The Court, therefore, GRANTS Summary Judgment in Defendant's favor, because Defendant did not breach the insurance policy when it denied Plaintiffs' theft claim.

---

[3] The Court does note, however, that Defendant misstates the date from which the statute of limitations runs. Plaintiffs contend the alleged theft occurred when NSane sent its demand letter in 2014 and/or when it sold the truck in 2015 (ECF No. 26 at PageIDs 204, 206), and under either scenario Plaintiffs' claims are not time-barred.

### B. Bad Faith

To state a bad faith claim under the statute, a plaintiff must show: (1) the policy of insurance must, by its terms, have become due and payable; (2) a formal demand for payment must have been made; (3) the insured must have waited 60 days after making demand before filing suit (unless there was a refusal to pay prior to the expiration of the 60 days); and (4) the refusal to pay must not have been in good faith. Montesi v. Nationwide Mut. Ins. Co., 970 F.Supp.2d 784, 791 (W.D. Tenn. 2013).

Plaintiffs' claim for bad faith fails on two grounds: (1) the insurance policy did not become due and payable, because NSane's actions did not amount to theft, and (2) Defendant's refusal to pay was in good faith, because Defendant's adjuster relied on a law enforcement's determination to not bring a theft charge and determination that the issue was civil.[4] Accordingly, the Court GRANTS Summary Judgment in favor of Defendant on Plaintiffs' bad faith claim.

### C. Punitive Damages

Having found there is no breach of contract or bad faith claim, the Court GRANTS Summary Judgment in favor of Defendant on the issue of punitive damages.

## IV. CONCLUSION

For the reasons stated above, the Court **GRANTS** Defendant's Motion for Summary Judgment.

---

[4] Plaintiffs contend these statements are inadmissible hearsay. (See ECF No. 26 at PageID 209; see also ECF No. 27 ¶ 8.) However, statements in an affidavit regarding insurer's conversation with law enforcement regarding any potential criminal charges of theft may be submitted on summary judgment on carrier's bad faith claim against insurer to show what law enforcement told insurer and that insurer relied on statements, rather than to prove that statements were true, and thus such statements are not inadmissible hearsay. Fed. R. Evid. 801.

**IT IS SO ORDERED**, this 5th day of July, 2017.

                                              /s/ Jon P. McCalla
                                           JON P. McCALLA
                                           UNITED STATES DISTRICT COURT JUDGE